B1040 (FORM 1040) (12/15)

|  |  |
|---|---|
| **ADVERSARY PROCEEDING COVER SHEET** <br> (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** <br> (Court Use Only) |

| **PLAINTIFFS** <br> Randolph Santizo, <br> Julia Lynn Santizo | **DEFENDANTS** |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) <br> Shumway Van <br> 8985 S. Eastern Ave., Suite 100 <br> Las Vegas, NV 89123 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) <br> ☒ Debtor       ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor     ☐ Other <br> ☐ Trustee | **PARTY** (Check One Box Only) <br> ☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin <br> ☒ Creditor     ☐ Other <br> ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint to Obtain a Determination of the Dischargeability of Student Loan Debt

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☒ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Randolph and Julia Lynn Santizo | | BANKRUPTCY CASE NO.<br>16-13531-led | |
| DISTRICT IN WHICH CASE IS PENDING<br>Nevada | | DIVISION OFFICE<br>Las Vegas | NAME OF JUDGE<br>Laurel E. Davis |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Samuel A. Marshall, Esq. | |

## INSTRUCTIONS

      The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

      A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

      The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**SHUMWAY VAN**
MICHAEL C. VAN, ESQ.
Nevada Bar No. 3876
SAMUEL A. MARSHALL
Nevada Bar No. 13718
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Tel: (702) 478-7770
Fax: (702) 478-7779
Michael@shumwayvan.com
Samuel@shumwayvan.com
*Counsel for Debtor*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| In Re: | Case No: 16-13531-led |
|---|---|
| Randolph Santizo<br>Julia Lynn Santizo,<br><br>Debtors. | Chapter 7<br><br>Date of Hearing:<br>Time of Hearing: |

## COMPLAINT TO OBTAIN A DETERMINATION OF THE DISCHARGEABILITY OF STUDENT LOAN DEBT

Debtors, Randolph and Julia Santizo, ("Santizos"), hereby file their Complaint to Obtain a Determination of the Dischargeability of Student Loan Debt (the "Complaint"), filed concurrently herewith the papers and pleadings on file with the Court, and any oral arguments the Court may entertain.

## JURISDICTION AND VENUE

1.  The Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §1334 and §157. This case arises under 28 U.S.C. §157(b)(2)(I).

2.  Venue is proper under 28 U.S.C. §1408(1).

3.  Under Fed. R. Bank. Proc. 4007(a), a debtor may file a complaint to obtain a determination of the dischargeability of any debt, and under Fed. R. Bank. Proc. 4007(b), this can be at any time, provided it does not fall under the §523(c) exceptions.

...

…

…

## MEMORANDUM OF POINTS AND AUTHORITIES

Failing to discharge Julia Santizo's ("Ms. Santizo") student loan debts would cause Ms. Santizo and her dependents to suffer an undue hardship. Ms. Santizo is unable to work in her given field and repay her student loan debts, as she has been occupied with providing full-time care for her physically and mentally disabled son. The following points and authorities support a decision to grant Ms. Santizo a discharge of her student loan debt.

### I.   FACTUAL BACKGROUND

The Santizos filed for Chapter 7 bankruptcy on June 28, 2016, under Case No. 16-13531-led in the District of Nevada, United States Bankruptcy Court. Their Chapter 7 filing was approved, and they are currently awaiting discharge. However, the Santizos are still suffering a significant financial burden. Ms. Santizo incurred One-Hundred and Thirty-Three Thousand, Four-Hundred Sixty-One Dollars ($133,461.00) in student loans with the intent to work full time as a school counselor in order to repay them. However, circumstances have changed, making this impossible.

The Santizos have two minor children: Violet Santizo (four [4] years old) and Lucas Santizo (almost one [1] year old). The Santizos' son, Lucas Santizo ("Lucas"), was born with a debilitating neurological disorder. This disorder affects his corpus callosum: the network of fibers that connect the two hemispheres of his brain. As a result of the thinning of his corpus collosum, Lucas is physically and mentally disabled.

Lucas requires frequent medical treatment and constant supervision, and the Santizos have incurred significant expenses in caring for him. As an infant, Lucas was cared for in the Neonatal Intensive Care Unit. Lucas has received multiple MRIs and has frequently visited neurologists and pediatricians, who originally struggled to diagnose him. His neurologist believes he may also suffer from cerebral palsy, but another MRI will be necessary to determine this. Lucas is treated by a chirporactor once a week, which costs the Santizos thirty-four dollars ($34.00) per visit. The Santizos also pay fifteen-dollars weekly ($15.00) so that Lucas can receive treatment at a play place with padded floors. Lucas receives physical therapy twice a month and occupational therapy twice a month. Nevada Early Intervention has paid for Lucas' physical and occupational therapy from the time he was five (5) weeks old, but these services are not provided to children over three (3). Lucas has also received feeding therapy, paid for by Nevada Early Intervention. Lucas' doctors have

recommended that he receive private physical and occupational therapy sessions with "My Left Foot" three times a week, but these sessions would cost ninety-dollars each ($90.00) and are not covered by the Santizo's medical insurance or by Nevada Early Intervention. Thus, Lucas has not received this recommended treatment, because the Santizos would not be able to afford monthly familial obligations necessary to survive if they were to spend an additional two-hundred and seventy dollars ($270.00) per week.

It is unlikely that Lucas Santizo will ever live a normal life or cease to require constant medical care and, given his young age, his care will be solely the Santizos' responsibility for many years to come. This responsibility will only increase when they cease to receive help from Nevada Early Intervention and as Lucas develops and the full-extent of his disabilities become known. It will likely become more difficult for Ms. Santizo to care for him when he is no longer a small child. The Santizos do not have any family that can help them financially or with child care. Lucas' disabilities have resulted in serious behavioral problems and his difficult temperment and fragile health eliminate regular child care as a viable option. Ms. Santizo is experienced in caring for her son, and she fears that another caretaker would not be able to adequately handle Lucas, and that Lucas could suffer an injury as a result. If Ms. Santizo were to go back to work, the expense of hiring a skilled nurse to care for Lucas full-time would negate her potential earnings. This would be a traumatic change for Lucas, who is accustomed to being cared for by his mother.

Additionally, Randolph Santizo ("Mr. Santizo") suffers from back problems that cause him pain and necessitate chiropractic treatment. However, he has foregone his chirpopractic treatment to pay for Lucas'. Mr. Santizo has continued to work full-time as a superviser for Southwest Airlines and has been forced to work a significant amount of overtime to meet his family's financial needs.

The Santizos have lived very conservatively, shopping primarily at discount stores and cooking their own meals or purchasing inexpensive fast food. Their household possessions are valued at a meager four-hundred dollars ($400.00), which include a micro-fiber sofa, several tables, a recliner, a desk, a computer, tv's, dishes, utensils, a dresser, a nightstand, and a vacuum, all of which are old and heavily worn and/or constructed of low quality materials. The Santizos spend six-hundred dollars ($600.00) per month on food for their family of four (4). They also spend

- 3 -

approximately three-hundred and sixty dollars ($360.00) each month on medical and hospital insurance, twenty dollars ($20.00) on vision and dental insurance, four-hundred dollars ($400.00) on transportation, which includes paying for gas to take Lucas to his frequent appointments, and three-hundred and seventy-six ($376.00) on car payments, along with regular tax witholdings and a sixty-dollar ($60.00) contribution to retirement accounts. While monthly medical expenses can greatly vary depending on whether Lucas visits a specialist or receives an MRI, the Santizos estimate that they generally spend about five-hundred dollars per month ($500.00), in addition to three-hundred and sixty dollars ($360.00) for insurance.

As for the Santizo's monthly expenses, they are currently renting a home for one-thousand, two-hundred dollars ($1,200.00) per month. They also pay for electricity (one-hundred dollars [$100.00] per month), heating/cooling (two-hundred and twelve dollars [$212.00] per month), and water/sewage (ninety-five dollars [$95.00] per month). Their only other significant expenses are for daycare for their daughter (three-hundred and sixty [$360.00] per month), clothing and laundry (one-hundred and sixty dollars [$160.00] per month), cell phones (two-hundred and fifty dollars [$250.00] per month), and Internet (eighty-five dollars [$85.00] per month).

Ms. Santizo received her undergraduate degree in Criminal Justice in 2006 from California State University, San Bernardino. The Santizos were living in Las Vegas when Ms. Santizo started her Masters in Business at the University of Phoenix in 2008. Ms. Santizo took about a year and a half of part-time classes before dropping out of the program. She was laid off from work at that time, and the Santizos were struggling financially. Mr. Santizo was working three jobs, and the Santizos had to break their lease and move in with Ms. Santizo's parents in California for a time. At the end of 2008, Ms. Santizo was hired by the University of Phoenix. In the fall of 2011, she started a Masters in School Counseling with the University of Phoenix. She completed all of the coursework for the program in June 2014. Ms. Santizo applied for jobs in her field and went to two (2) interviews to obtain employment with the school district during the summer of 2014, but she was not hired for either position. In November of 2014, Ms. Santizo became pregnant with Lucas. Once the Santizos were aware that Ms. Santizo was pregnant, they planned for her to go back to work full time with the school district after Lucas was born. Although she was not employed with the school district, she continued to network with the school district's employees and stayed in

- 4 -

contact with them in the hopes that she would be able to secure employment after the birth of Lucas. The Santizos planned for Ms. Santizo to work for the school district for ten (10) years, to make on-time student loan payments during that time, and to eventually have the remaining balance of her student loans forgiven as a part of the federal program. However, Lucas has been a special needs child since his birth, and Ms. Santizo has devoted her time to caring for him and making sure that he receives the best medical treatment possible. Ms. Santizo has not been able to utilize her graduate degree by working as a school counselor as she orignally planned.

The Santizos have incurred additional expenses in caring for their special needs child, and Ms. Santizo's student loan debt has become unduly burdensome. Ms. Santizo has defaulted on approximately thirty-four thousand, eight-hundred ninety-six dollars ($34,896.00) of her student loans, out of a total of approximately one-hundred thirty-three thousand, four-hundred sixty-one dollars ($133,461.00) in student loans.

## II.   LEGAL STANDARD

Under 11 U.S.C. §523(a)(8), student loan debt cannot be discharged unless failing to allow the debt to be discharged would impose an undue hardship on the debtor and the debtor's dependents. The Ninth Circuit has adopted a test to determine if undue hardship would result from forcing a debtor to repay his or her student loan debts: the *Brunner* test. *United Student Aid Funds v. Pena* (In re Pena), 155 F.3d 1108, 1111 (9th Cir. 1998).

## III.   LEGAL ARGUMENT

### A. Ms. Santizo's Personal Hardships Should Be Sufficient to Satisfy the *Brunner* Test.

The *Brunner* test (*In re Brunner,* 831 F.2d 395, 396 [2d Cir. 1987]) requires that a debtor show that they cannot maintain, based on current income and expenses, a 'minimal' standard of living for themselves and for their dependents if forced to repay their student loans. *In re Pena*, 155 F.3d at 1111. This is also referred to as showing undue hardship. *Id.* The debtor must also show that additional circumstances make it likely that the financial situation will persist for a significant portion of the repayment period. The third part of the *Brunner* test requires showing that the debtor has made a good faith effort to repay the loans. *Id.* In order to show good faith to satisfy the third part of the *Brunner* test, a debtor can make payments on the loan, or show that the forces preventing repayment are beyond the debtor's reasonable control. *Brown v. Salliemae Servicing Corp.* (In re

- 5 -

Brown), 227 B.R. 540, 546 (Bankr. S.D. Cal. 1998). The failure to make a single payment on student loans does not preclude a finding of good faith where the debtor has not possessed the requisite resources to make payments. *Id.*

This three-part test has been consistently used in Ninth Circuit Bankruptcy cases. The court in *Nys v. Educ. Credit Mgmt. Corp.* (In re Nys), 308 B.R. 436, 446-447 (B.A.P. 9th Cir. 2004) set out a list of 12 factors to consider when determining if there are additional circumstances that make it likely the financial situation will persist in order to satisfy the second prong of the *Brunner* test. These factors are: (1) Serious mental or physical disability of the debtor or the debtor's dependents which prevents employment or advancement; (2) The debtor's obligations to care for dependents; (3) Lack of, or severely limited education; (4) Poor quality of education; (5) Lack of usable or marketable job skills; (6) Underemployment; (7) Maximized income potential in the chosen educational field, and no other more lucrative job skills; (8) Limited number of years remaining in work life to allow payment of the loan; (9) Age or other factors that prevent retraining or relocation as a means for payment of the loan; (10) Lack of assets, whether or not exempt, which could be used to pay the loan; (11) Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; (12) Lack of better financial options elsewhere. *Id.*

The court in *Saxman v. Educ. Credit Mgmt. BJR Corp.* (In re Saxman), 325 F.3d 1168, 1175 (9th Cir. Wash. 2003) held that a bankruptcy court may exercise its equitable authority to grant a partial discharge of student debt under the Bankruptcy Code. Therefore, if this court determines a full discharge of Ms. Santizo's student loan debts is for some reason inappropriate, a partial discharge of her student debt may still be granted.

Ms. Santizo cannot maintain a 'minimal' standard of living for herself and for her dependants if forced to repay her student loans. The Santizos are already spending extremely conservatively, and have still been unable to provide Lucas with all of the care that has been recommended for him. They are not vacationing, dining out, or spending money on entertainment. They are feeding a family of four on six-hundred dollars ($600.00) a month, and own nothing more than a few worn and inexpensive pieces of furniture. The house and the cars that they lease are not luxurious, but these expenses forced them to file for bankruptcy. If Mr. Santizo were to lose his job,

the Santizos would immediately be unable to provide food and shelter for their family. Their insurance and transportation expenses are necessary to provide proper care for Lucas. Mr. Santizo is not receiving the chiropractic care he needs. Ms. Santizo also has compelling additonal circumstances that make it likely that the financial situation will persist for a significant portion of the repayment period, as seen when looking at the *Nys* factors.

Ms. Santizo adequately satisfies the *Nys* factors: (1) Ms. Santizo's child is severely mentally and physically disabled, and her caretaker role has prevented employment. She also has another young child to care for. (2) Ms. Santizo's husband is employed full-time and frequently works overtime hours, and the Santizos have no family to help with childcare. The child also requires specialized and individualized care that a daycare service or babysitter would be unnable to provide. (3) Ms. Santizo is educated, but she is unable to work in the field in which she was trained because working as a school counselor requires working outside the home. (4) Ms. Santizo received her graduate education from the University of Phoenix. This is not a particularly well-regarded institution, and thus her employment opportunities are more limited. Further, her degrees are in very specific areas. (5) Ms. Santizo is unable to use her job skills because they require working outside the home. (6) Ms. Santizo is filing for unemployment, but this will be inadequate to sustain a minimum standard of living given her circumstances. (7) Ms. Santizo has received an appropriate level of education given her chosen field, but she has not had the opportunity to earn an income. She has no other more lucrative job skills, and she is skilled in interpersonal communication that by nature takes place outside the home. (8) Ms. Santizo is not elderly, but she has acquired a caretaker responsibility that will likely last for the remainder of her life. (9) Mr. Santizo is earning a income that is appropriate for someone in his chosen field, and he is currently the sole financial provider for the family. Thus, it would be inappropriate for Ms. Santizo to pursue further training or relocate to find work, as this would require that Mr. Santizo resign from his employment position to care for Lucas. Further, there are sufficient opportunities in this area for Ms. Santizo if she were able to work outside the home. (10) The Santizos do not own any real property or vehicles. Their personal property is of negligible value, and they do not have any alternative sources of income or significant retirement savings. (11) Lucas' care will likely become more expensive as he grows. His behavioral problems will make him more difficult to control as an older child, and he may soon be diagnosed

with cerebral palsy as well. Currently, he is not receiving the full level of care recommended by his doctors, and if this physical and occupational therapy was pursued, the Santizos would be paying an additional two-hundred and seventy dollars ($270.00) a week. Further, when he turns three the significant contributions received from Nevada Early Intervention will cease. The full extent of his disability will not be known until he reaches a more mature age. (12) Mr. Santizo is currently employed and receiving an appropriate salary for his position, and relocation would not change the fact that Ms. Santizo is unable to work unless the Santizos were paying for costly full-time nursing care. *Id.*

      As to the third part of the Brunner test, Ms. Santizo has made a good faith effort to repay the loans to the extent that was possible given her special circumstances. The Santizos have not, at any point in time, had the required resources to make the student loan payments. Ms. Santizo did not just stop working and allow her debts to multiply while she was in school. She worked part-time throughout her schooling, and the Santizos struggled financially throughout that time, even moving in with Ms. Santizo's parents for a while because they could not afford rent. Mr. Santizo has worked continuously as well, and even took on three jobs at one point while Ms. Santizo was in school. Ms. Santizo did not finish her Masters in School Counseling until June of 2014, she then spent the summer after she graduated looking for a job. She interviewed for two positions but was not hired for either of them. A short time later, in November of 2014, Ms. Santizo learned that she was pregnant, so the Santizos planned for her to pursue work after her Lucas was born. She continued to network with employees of the school district in the hopes of quickly securing employment following the birth of her Lucas. As a recent graduate, Ms. Santizo's loans were deferred, so her lack of payments during this time was to be expected and is not a sign of bad faith. Ms. Santizo was actively seeking employment immediately following her graduation. Had Lucas been born healthy, she surely would have continued seeking employment and returned to work a short time later. It is Lucas' special needs that are keeping Ms. Santizo from returning to work. It is not due to the fact the Santizos have children, as they were able to balance work, education, and child-rearing in the past in caring for their now four (4) year old daughter. The Santizos have worked very hard to provide for their family, and have consistently lived a very conservative lifestyle. Despite their efforts, repaying Ms. Santizo's significant student loans is completely out of

- 8 -

reach for the family, as they have had to prioritize providing basic necessities for their family and providing treatment to their disabled son over the payment of their debts. Prolonged financial hardships have deprived them of an opportunity to repay the student loans.

### B. A Discharge of Student Loans Has Been Granted in Similar Situations and is Therefore Appropriate for Ms. Santizo.

In *Edwards v. Educ. Credit Mgmt. Corp.* (In re Edwards), 2016 Bankr. LEXIS 1029 (Bankr. D. Ariz. Mar. 31, 2016 at *4-5), the debtor was a 56-year-old woman with two adult children that were dependent on her. The eldest child suffered from blindness and organ failure. The debtor took care of her and paid for medical expenses not covered by public assistance. However, the eldest child lived on her own. The debtor's younger child was a convicted felon who had spent years in correctional facilities, and who suffered from numerous mental health disorders that made it unlikely that she would be able to support herself in the future. The debtor did not want to move into the city or take on full-time employment because of her care-taker role, and because of concerns that her mentally ill child was likely to get into trouble with the law again. *Id.* at *20. The debtor did not satisfy each and every one of the twelve *Nys* factors, but she did satisfy most of them, and the debtor's special circumstances were enough to satisfy the court. *Id.* Thus, the debtor was granted a complete discharge of her student loan debt. *Id.* at *21.

In the present case, both of the children are young minors who live with the debtor and who are completely dependent on her. Whereas the mother in *Edwards* was primarily concerned that her mentally ill child would break the law if left unsupervised, Ms. Santizo cannot go back to work because her son is mentally and physically disabled and requires constant supervision and care for his own safety and well-being. However, unlike *Edwards*, the Santizo children are both minors who cannot live on their own and who are still Ms. Santizo's legal responsibility.

In *England v. United States* (In re England), 264 B.R. 38 et. seq. (Bankr. D. Idaho 2001), the court found that the plaintiffs had failed to establish good faith because they hadn't explored alternative repayment programs, the loans were over ten (10) years old and they had not made an effort to make payments, they had spent $2,300 of a worker's compensation settlement on luxuries like dining out, vacationing, new furnishings and a new computer, and because the mother had chosen to be a stay-at-home mother, even though she was able to work and had marketable nursing

skills. The father and one of the children had a genetic disorder that required carefully regulating potassium ingestion, but the child was relatively healthy and the father was healthy enough to work and was employed. *Id.* The court still granted a partial discharge, discharging the accrued interest and other accrued charges on the debts so that they could pay the principal balance. *Id.*

Unlike *England*, the Santizos have been living frugally and have been in a dire financial situation for years, leaving them unable to make loan payments. Further, Lucas requires constant specialized care and has a serious disability that has forced Ms. Santizo to stay home to care for him, whereas in *England* the mother made a choice to stay home simply because she did not want to place her children in childcare.

In *Hedlund v. Educ. Res. Inst., Inc.*, 718 F.3d 848, 848-850 (9th Cir. Or. 2013), the appellate court held that the bankruptcy court's good faith finding was not clearly in error where a law school graduate who failed the bar exam twice and locked himself out of his car on the day of the third exam attempt was granted a partial discharge of his student loans. The bankruptcy court had found that Mr. Hedlund had worked to sufficiently maximize his income considering the area in which the Hedlunds lived. *Id.* at 852. The bankruptcy court had also excused some excessive expenses as marginal, including leasing a new car and paying for cable and haircuts, and had found that Mr. Hedlund should not be required to work more than a forty (40) hour week. *Id.* The bankruptcy court did not find that the Hedlunds were acting in bad faith, despite the fact that Mrs. Hedlund was only working one day a week and the children had grandparents who lived nearby and were willing to provide daycare so that Mrs. Hedlund could work more hours. *Pa. Higher Educ. Assistance Agency v. Hedlund* (In re Hedlund), 2004 Bankr. LEXIS 1295 at *3-*4 (B.A.P. 9th Cir. Aug. 6, 2004).

Unlike *Hedlund*, the Santizos have no family to help them with childcare, and cannot leave their disabled child with a caregiver of average experience. Further, the Santizos are not paying for any luxuries like a new car or cable television. Unlike Mr. Hedlund, Mr. Santizo has consistently worked whatever overtime hours Southwest gave him, and at one point was working three jobs in an attempt to better the Santizos' financial situation. The Santizos have historically been a dual-income household. Ms. Santizo even continued to work part-time while she was going to school and caring for her daughter. Mrs. Hedlund had only one healthy child to care for, while Ms. Santizo has two children, one of which has special needs.

### III. CONCLUSION

Ms. Santizo has adequately satisfied the conditions of the *Brunner* test. The Santizos have been living a frugal lifestyle for many years, and if forced to repay the student loans, they would be forced below a minimal standard of living. Lucas and Mr. Santizo are already being deprived of recommended medical care because the Santizos simply do not have the requisite funds. Lucas' serious mental and physical disabilities are a compelling additional circumstance that is unlikely to improve in the future, and the caretaker burden placed on Ms. Santizo will indefinitely prevent her from being able to utilize the education she received. Further, the Santizos have made every effort to improve their financial situation so that they may be able to repay the student loans, but it is simply not feasible that they could repay without sacrificing familial obligations necessary to survival. Therefore, Ms. Santizo's student debt should be discharged in its entirety.

WHEREFORE, Plaintiff prays for relief as follows:

1. For a determination that Plaintiff's student loan debt is fully dischargeable;

2. If the court declines to find that the Plaintiff's debt is fully dischargeable, for a determination that the student loan debt can be partially discharged, so that Plaintiff may have a more manageable debt and not be unduly burdened by the accruing interest;

3. For such other and further relief as the court deems just and proper.

DATED this 23rd day of August, 2016.

SHUMWAY VAN

Michael C. Van, Esq. #3876
Samuel A. Marshall, Esq. #13718
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
*Counsel for Debtors*